# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMHOTEP MUSTAQEEM,<br><br>                            Plaintiff,<br>  vs.<br><br>MICHAEL J. ASTRUE,<br><br>                            Defendant. | CASE NO. 09-CV-1782 JLS (JMA)<br><br>**ORDER: (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;**<br>**(2) GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT** |

      Presently before the Court are Plaintiff Imhotep Mustaqeem's motion for summary judgment (Doc. No. 12) and Defendant Michael J. Astrue's cross motion for summary judgment (Doc. No. 17 (Mem. ISO Def.'s MSJ)). Also before the Court are the parties' respective oppositions. (Doc. Nos. 18 (Def.'s Opp'n), 19 (Pl.'s Opp'n).) Having considered the parties' arguments and the law, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross motion.

## PROCEDURAL BACKGROUND

      On March 28, 2006, Plaintiff filed an application for supplemental security income. (Doc. No. 10 (Administrative Record (A.R.)), at 92–98.) After denials on initial determination (A.R. 48–51) and reconsideration (A.R. 54–59), Plaintiff timely requested a hearing before an administrative law judge (ALJ) (A.R. 61.) At the hearing, Plaintiff was represented by an attorney and testified on his own behalf. (A.R. 22–40.) A vocational expert also testified at the hearing. (A.R. 40–45.) In a written decision, the ALJ found that Plaintiff was not disabled and denied him benefits. (A.R. 10-21.) The

decision of the Social Security Administration (SSA) became final when the Appeals Council denied Plaintiff's request for review. (A.R. 1–3.) On August 14, 2009, Plaintiff timely commenced this action seeking judicial review of the SSA's decision. (Doc. No. 1.)

**FACTUAL BACKGROUND**

Plaintiff was born on November 27, 1959. (A.R. 115.) He claimed to be disabled as of April 1, 2005, due to degenerative heart failure, schizophrenia, and bipolar. (A.R. 121.) According to Plaintiff, his conditions and treatments render him unable to stand for prolonged periods of time, lift more than twenty pounds, stay awake, or concentrate. (A.R. 121.)

**1. Medical Evidence**

As to physical limitations, consultative examining physician Carl B. Sainten, M.D., opined that Plaintiff could lift or carry one hundred pounds occasionally and fifty pounds frequently, stand or walk for six hours in an eight hour day, and sit for six hours in an eight hour day. (A.R. 314.) Dr. Sainten opined that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. (A.R. 314.) State agency physician R.B. Paxton, M.D., agreed that Plaintiff could stand, walk, or sit for six hours in an eight hour workday, but opined that Plaintiff could only lift twenty pounds occasionally and ten pounds frequently. (A.R. 335.) As to postural limitations, Dr. Paxton opined that Plaintiff could occasionally climb stairs, balance, stoop, kneel, crouch, or crawl, and never climb ladders, ropes, or scaffolds. (A.R. 336.) Like Dr. Sainten, Dr. Paxton opined that Plaintiff had no manipulative, visual, communicative, or environmental limitations. (A.R. 336–37.)

As to mental limitations, California Department of Corrections diagnosed Plaintiff with major depressive disorder and polysubstance dependence. (A.R. 219.) He was prescribed Risperdal, Prozac, and Remeron. (A.R. 213.) After his diagnosis, Plaintiff repeatedly reported symptoms including auditory hallucinations, sleep disturbance, eating disturbance, and depression. (A.R. 212–13, 253–54, 259–60, 317, 458, 461.)

In June 2006, consultative examining physician Mounir Soliman, M.D., observed that Plaintiff was cooperative, alert, oriented, and insightful, with normal capacity for abstract thinking. (A.R. 319.) Plaintiff reported that he managed his personal hygiene and finances, ran errands, cooked, and cleaned. (A.R. 319.) Although Plaintiff reported inability to concentrate on daily activities, Dr.

Soliman opined that Plaintiff was able to understand, carry out, and remember simple and complex instructions. (A.R. 319–20.) Dr. Soliman also opined that Plaintiff was able to interact with coworkers, supervisors, and the general public, and withstand the stress and pressures associated with an eight-hour workday. (A.R. 320.) Although Plaintiff's mood was depressed, Dr. Soliman opined that Plaintiff's condition was treatable and manageable with appropriate medication. (A.R. 319–21.)

In 2007, state agency psychiatrist H.N. Hurwitz, M.D., diagnosed Plaintiff with schizophrenic, paranoid, or other psychotic disorder; affective disorder; and substance abuse disorder. (A.R. 354–61.) Dr. Hurwitz opined that Plaintiff had moderate difficulties maintaining concentration, persistence, or pace; moderate difficulties in maintaining social functioning; and mild restriction of daily activities. (A.R. 362.) Plaintiff had no episodes of decompensation. (A.R. 362.) Dr. Hurwitz opined that Plaintiff was moderately limited in his ability to maintain concentration and attention for extended periods, interact appropriately with the general public, carry out detailed instructions, and set realistic goals. (A.R. 365–66.) Otherwise, Plaintiff's capacities for understanding and memory, sustained concentration and persistence, social interaction, and adaptation were not significantly limited. (A.R. 365–66.) Dr. Hurwitz concluded that Plaintiff could perform simple repetitive tasks in a variety of settings, and could relate adequately with coworkers and supervisors, but not with the public. (A.R. 367.)

In 2008, George Flood, M.D., diagnosed Plaintiff with schizoaffective disorder, mitral valve disease, and hypertension. (A.R. 590.) Dr. Flood opined that Plaintiff's persistent auditory hallucinations interfered with his ability to concentrate. (A.R. 591.) Plaintiff also exhibited persistent depressed mood with impaired attention to tasks. (A.R. 591.) Dr. Flood opined that Plaintiff had marked difficulties in maintaining concentration, persistence, or pace; marked difficulties in maintaining social functioning; and moderate restriction of daily activities. (A.R. 593.) Plaintiff also had four or more episodes of decompensation, each of extended duration. (A.R. 593.) Although Plaintiff had experienced some improvement with antipsychotic and antidepressant medication, Dr. Flood opined that the side effects of Plaintiff's medications included drowsiness and fatigue. (A.R. 591.) Dr. Flood opined that Plaintiff's impairments or treatment would cause him to be absent from work more than three times per month. (A.R. 592.) Dr. Flood concluded that Plaintiff was unable to

1 maintain gainful employment due to his schizophrenia and schizoaffective disorder. (A.R. 593.)

## 2. Third Party Evidence

Before the hearing, Plaintiff submitted a third party function report from Damian Ball. (A.R. 181–88.) Mr. Ball identified himself as a mental health provider and stated that he had known Plaintiff for six months. (A.R. 181.) Mr. Ball stated that Plaintiff spent time with others and went outside on a daily basis; was able to sweep the floor and do laundry; had no problem with personal care; and managed his own finances. (A.R. 182–84.) However, Mr. Ball stated that Plaintiff had difficulty getting along with others, following instructions, completing tasks, climbing stairs, lifting, walking, talking, seeing, remembering, concentrating, and understanding. (A.R. 186.) Mr. Ball concluded that Plaintiff's paranoia and depression prevented Plaintiff from living a normal functioning life. (A.R. 188.)

## 3. Relevant Testimony

At the hearing, Plaintiff testified regarding his enrollment at San Diego City College, past work experience, medical conditions, symptoms, and treatment. (A.R. 24–41.) Plaintiff testified that, before the onset of his impairment, he worked as a general laborer and a telemarketer. (A.R. 26.) After the onset of his impairment, he unsuccessfully attempted to work as a telemarketer. (A.R. 26–27.) He also attempted to help out around the hotel where he lived, but he found the work to be "too much" because he was scared of the other hotel residents. (A.R. 27.)

Plaintiff testified that he was receiving treatment at the Veterans Administration. (A.R. 28.) He stated that his medication regimen reduced his auditory hallucinations and paranoia. (A.R. 30–31.) However, he still experienced paranoia and depression three or four days per week. (A.R. 31.) He testified that he went to the Veterans Administration for treatment whenever he felt like he had to, but at least once per month. (A.R. 32.)

Regarding his physical limitations, Plaintiff testified that he experienced lightheadedness and fatigue when he over-exerted himself. (A.R. 34.) He stated that he could stand or walk comfortably for less than an hour at a time, sit comfortably for an hour at a time, and lift ten pounds on a regular basis. (A.R. 34–35.) He testified that he could not work at any job where he had to be at the job eight hours a day, five days a week. (A.R. 35.)

Plaintiff testified that he was attending San Diego City College, where he was taking physical education and Arabic. (A.R. 39.) He testified that he took more units outside of the summer term. (A.R. 39–40.) He also testified that he attended at least one and as many as three Narcotics Anonymous meetings per day. (A.R. 37.) He stated that, when he was not at school or meetings, he spent his time talking to people in the hotel where he lived and riding the trolley. (A.R. 38.)

The ALJ posed hypothetical questions to the vocational expert based on Dr. Paxton's, Dr. Sainten's, and Dr. Flood's assessments of Plaintiff. (A.R. 41–44.) The vocational expert opined that a younger individual with a residual functional capacity of light work, a tenth grade education, and occasional postural limitations, who was limited to non-public simple repetitive tasks, could not perform Plaintiff's past relevant work, but could perform alternative work available in significant numbers in the local and national economies. (A.R. 42.) The vocational expert opined that an individual with ability to interact with coworkers and the public, major depressive disorder with psychotic features, and greater residual functional capacity could perform the same alternative work. (A.R. 43.) However, the vocational expert opined that an individual with the limitations contained in Dr. Flood's assessment of Plaintiff could not sustain any work. (A.R. 43–44.)

The ALJ also posed a hypothetical question based on Plaintiff's testimony about his symptoms and limitations. (A.R. 44.) The vocational expert opined that no work would be available under the circumstances. (A.R. 44.)

**4.     The ALJ's Decision**

After considering the record, the ALJ made the following relevant findings:

> 2.     The claimant has the following severe impairments: status post aortic valve replacement in 1995, chest pain secondary to possible angina, a major depressive disorder, and a polysubstance abuse disorder, in remission (20 CFR 416.920(c)).
>
> . . . .
>
> 3.     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Supbpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).
>
> . . . .
>
> 4.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant is limited to work involving simple repetitive tasks with no public contact, and can interact with coworkers and

| | |
|---|---|
| 1 | supervisors. |
| 2 | . . . . |
| 3 | 9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966). |
| 5 | . . . . |
| 6 | 10.    The claimant has not been under a disability, as defined in the Social Security Act, since March 28, 2006, the date that the application was filed (20 CFR 416.920(g)). |

(A.R. 15–16, 20–21.)

Based on all of the above, the ALJ denied Plaintiff's application for supplemental security income. (A.R. 21.)

**LEGAL STANDARD**

To qualify for disability benefits under the Social Security Act (the Act), a claimant must show two things: (1) He suffers from a medically determinable impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work he performed or any other substantially gainful employment that exists in the national economy. *See* 42 U.S.C. §§ 423(d)(1)(A), (2)(A). A claimant must meet both requirements to be classified as disabled. *Id.*

Sections 205(g) and 1631(c)(3) of the Act allow claimants whose applications have been denied by the SSA to seek judicial review of the Commissioner's final agency decision. 42 U.S.C. §§ 405(g), 1383(c)(3). The Court should affirm the decision unless "it is based upon legal error or is not supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion," considering the record as a whole. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is "more than a mere scintilla but less than a preponderance." *Bayliss*, 427 F.3d at 1214 n.1 (quoting *Tidwell*, 161 F.3d at 599) (internal quotation marks omitted). "The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion . . . ." *Frost v. Barnhart*, 314 F.3d 359, 366–67

1  (9th Cir. 2002) (quoting *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)) (internal quotation marks
2  omitted).

3       "If the evidence can reasonably support either affirming or reversing the Secretary's
4  conclusion, the court may not substitute its judgment for that of the Secretary." *Flaten v. Sec'y of*
5  *Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The Court must uphold the denial of
6  benefits if the evidence is susceptible to more than one rational interpretation, one of which supports
7  the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

8       Section 405(g) permits a reviewing Court to enter a judgment affirming, modifying, or
9  reversing the Commissioner's decision. 42 U.S.C. § 405(g). However, "the proper course, except in
10 rare circumstances, is to remand to the agency for additional investigation or explanation." *INS v.*
11 *Ventura*, 537 U.S. 12, 16 (2002) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)) (internal
12 quotation marks omitted).

## ANALYSIS

14      Plaintiff alleges that the ALJ failed to: (1) provide specific and legitimate reasons for rejecting
15 Dr. Flood's assessment (Doc. No. 12-1 (Mem. ISO Pl.'s MSJ), at 18–20); (2) properly evaluate
16 Plaintiff's credibility (*id.* at 20–22); (3) consider Mr. Ball's third party function report (*id.* at 22–23);
17 and (4) provide substantial evidence to support his conclusions (*id.* at 23–24). The Court addresses
18 each argument in turn.

19 **1.    Dr. Flood's Assessment**

20      First, Plaintiff contends that the ALJ rejected Dr. Flood's assessment of Plaintiff without
21 providing specific and legitimate reasons supported by substantial evidence in the record. (Mem. ISO
22 Pl.'s MSJ 19–20.) Defendant responds that the ALJ properly rejected Dr. Flood's assessment because
23 (1) it was not substantiated by the medical opinions of state agency physicians; (2) it was not
24 supported by contemporaneous medical findings; and (3) it was contradicted by Plaintiff's daily
25 activities. (Mem. ISO Def.'s MSJ 5–7.)

26      The Social Security Act's implementing regulations distinguish among the opinions of three
27 types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine
28 but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the

claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)) (alterations in original).

"When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992)). Although a treating physician's opinion ordinarily carries more weight than other types of opinion evidence, *Holohan*, 246 F.3d at 1202, "an ALJ need not give controlling weight to the opinion of a treating physician," *Batson*, 359 F.3d at 1194–95. "An ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor . . . if she or he provides 'specific and legitimate' reasons supported by substantial evidence in the record." *Holohan*, 246 F.3d at 1202 (quoting *Lester*, 81 F.3d at 830). Similarly, the ALJ may reject a treating physician's controverted opinion on the ultimate issue of disability if he provides "specific and legitimate" reasons for rejecting the treating physician's opinion. *Id.* at 1203 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). And "an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing *Matney*, 981 F.2d at 1019).

Dr. Flood's status as a treating physician is undisputed. (See Mem. ISO Def.'s MSJ 5; Mem. ISO Pl.'s MSJ 19.) Dr. Flood's opinion was contradicted by the opinions of both the state agency physicians (A.R. 334–38 (Dr. Paxton), 354–67 (Dr. Hurwitz)) and examining physician Dr. Soliman (A.R. 317–21). Thus, the ALJ had to provide "'specific and legitimate' reasons supported by substantial evidence in the record" for rejecting Dr. Flood's assessment. *Holohan*, 246 F.3d at 1202. The ALJ wrote:

> As for the opinion evidence, the undersigned rejects the opinions of Dr. Flood . . . . Dr. Flood's findings do not comport with Veterans Administration records dated February 27, 2008, where a mental health intake summary suggests that the claimant had improved and was stable on his medications. The claimant reported marked improvement in his symptoms on his medications. Mental status examination indicated that his mental illness symptoms were well controlled on his medication regimen which included Remeron, Risperdal, Wellbutrin[,] and Benadryl. Dr. Flood noted that the claimant only had two visits with him on February 27, 2008 and June 10, 2008. Moreover, the assessment by Dr. Flood is inconsistent with the evidence of record, including the following: the claimant has successfully attended San Diego City

> College, and that last fall he took 12 units constituting a full time schedule; the claimant is active in Narcotics Anonymous and Alcoholics Anonymous meeting; the claimant has succeeded in stopping the use of illicit drug; and, the claimant's auditory hallucinations have greatly lessened with medications.

(A.R. 19–20 (citation omitted).)

The Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting Dr. Flood's assessment. Although Plaintiff notes that treatment records from 2005 through 2007 indicate that Plaintiff suffered from a "psychotic disorder that interferes with his life functioning" (A.R. 422), characterized by depressed sleep, energy, and appetite; irritable and suspicious mood; auditory hallucinations; blunted affect; and dysphoric feeling (A.R. 212–13, 215, 458), more recent treatment records cited by the ALJ indicate that Plaintiff's mental illness symptoms had markedly improved with medication (A.R. 556). Dr. Soliman opined that Plaintiff's psychiatric condition was "treatable and manageable with appropriate medication." (A.R. 320–21.) Both Dr. Soliman and Dr. Hurwitz opined that Plaintiff was not significantly limited in his ability to interact with coworkers and supervisors, and could maintain gainful employment. (A.R. 320, 367; *see Tonapetyan*, 242 F.3d at 1144 (concluding that opinion of examining physicians constituted "specific and legitimate reason[]" for rejecting treating physician's opinion).) Plaintiff also testified that he attended classes in the disabled students program at San Diego City College (A.R. 39–40) and participated in as many as three Narcotics Anonymous meetings per day (A.R. 37).

This evidence was adequate to support the ALJ's rejection of Dr. Flood's assessment, considering the record as a whole. *See Webb*, 433 F.3d at 686 (citing *Richardson*, 402 U.S. at 401). It contradicted Dr. Flood's assessment that Plaintiff exhibited marked difficulties in maintaining concentration, persistence, or pace, and social functioning, and his opinion that Plaintiff was unable to maintain gainful employment due to his schizophrenia and schizoaffective disorder. Accordingly, the ALJ did not err by rejecting Dr. Flood's assessment, in favor of the opinions of both the state agency physicians and Dr. Soliman.

**2.     Plaintiff's Credibility**

Second, Plaintiff contends that the ALJ failed to provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony. (Mem. ISO Pl.'s MSJ 21–22.) Defendant responds that the ALJ properly discredited Plaintiff's testimony because it was (1) inconsistent with his conduct and

1  (2) unsupported by the record. (Mem. ISO Def.'s MSJ 7.)

2  "While an ALJ is responsible for determining the credibility of a claimant, an ALJ cannot reject a claimant's testimony without giving clear and convincing reasons." *Holohan*, 246 F.3d at 1208 (citing *Reddick*, 157 F.3d at 722). "[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Id.* (citing *Reddick*, 157 F.3d at 722). "In weighing a claimant's credibility, the ALJ may consider [the claimant's] reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citing *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). "If the ALJ's credibility finding is supported by substantial evidence in the record," a reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ discredited Plaintiff's statements "concerning the intensity, persistence[,] and limiting effects" of his symptoms "to the extent they [were] consistent with the residual functional capacity assessment." (A.R. 19.) Specifically, the ALJ concluded that Plaintiff's allegations of paranoia several days per week, with depression, were inconsistent with the medical evidence of record. (A.R. 19.) And the ALJ concluded that Plaintiff's "part time employment and the fact that [he had] been receiving grants to attend San Diego City College" impinged his credibility regarding his employment history. (A.R. 19.)

The Court finds that the ALJ gave clear and convincing reasons, which were supported by substantial evidence, that Plaintiff was not entirely credible. As to the medical evidence, Dr. Soliman opined that Plaintiff's psychiatric condition was "treatable and manageable with appropriate medication." (A.R. 320–21.) Dr. Paxton opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; that he could sit, stand, or walk for six hours in an eight-hour workday; that he had no manipulative, visual, or environmental limitations; and that he had moderate postural limitations. (A.R. 335–37.) Both Dr. Soliman and Dr. Hurwitz opined that Plaintiff was not significantly limited in his ability to interact with coworkers and supervisors, and could maintain

1 gainful employment. (A.R. 320, 367.) Thus, substantial evidence supported the ALJ's conclusion that Plaintiff's impairments were not as disabling as he alleged. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.") (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).

Further, Plaintiff's attendance at San Diego City College was inconsistent with the level of debilitating impairment that Plaintiff asserted. *See Reddick*, 157 F.3d at 722 (holding that a claimant's daily activities bear on credibility "if the level of activity [is] inconsistent with the [c]laimant's claimed limitations). Specifically, Plaintiff testified that he experienced debilitating paranoia and depression three or four days per week (A.R. 31–32), could stand or walk comfortably for less than an hour at a time, and could sit comfortably for an hour at a time (A.R. 35). Yet Plaintiff testified that he was taking two classes in the disabled students program at San Diego City College and took more units outside of the summer term. (A.R. 39–40.) The ALJ properly considered Plaintiff's inconsistent statements and actions in weighing his credibility. *See Clark v. Astrue*, 2010 WL 842322, at *10 (W.D. Wash. Mar. 2, 2010) (holding that ALJ properly considered claimant's ability to attend college classes in rejecting allegations of disabling functional limitations).

Plaintiff takes umbrage at the ALJ's conclusion that Plaintiff's "part time employment" impinged his credibility regarding his employment history (A.R. 19). (Pl.'s Opp'n 5.) The conclusion that Plaintiff worked part time was erroneous; Plaintiff testified attempted to help out around the hotel where he lived, but he found the work to be "too much" because he was scared of the other hotel residents. (A.R. 27.) However, the ALJ's error in concluding that Plaintiff worked part time "does not negate the validity of the ALJ's ultimate [credibility] conclusion" because the inconsistencies between the medical record and Plaintiff's actions on one hand, and Plaintiff's testimony on the other hand, amount to substantial evidence supporting the ALJ's credibility determination. *Carmickle*, 533 F.3d at 1162 (alteration in original). Hence, the ALJ's error was harmless and does not warrant reversal. *Id.*

Accordingly, the ALJ did not err in discrediting Plaintiff's testimony.

//

**3.     Mr. Ball's Third Party Function Report**

Third, Plaintiff contends that the ALJ erred by considering the third party function report from Mr. Ball. (Mem. ISO Pl.'s MSJ 22–23.) Defendant responds that applicable regulations did not require the ALJ to address lay witness testimony, and in any event, the ALJ's failure to consider Mr. Ball's testimony was harmless. (Mem. ISO Def.'s MSJ 9–10.)

"Lay witness testimony as to a claimant's symptoms is competent evidence that an ALJ *must* take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (emphasis added); *accord Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). This standard is equally applicable to written statements. *See Schneider v. Commissioner of Soc. Sec. Admin.*, 223 F.3d 968, 974–75 (9th Cir. 2002).

Here, the ALJ erred by failing to expressly consider the third-party function report submitted by Mr. Ball in advance of the hearing. If an ALJ fails to expressly consider lay witness testimony, the Court must determined whether a "reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Robbins*, 466 F.3d at 885 (quoting *Stout*, 454 F.3d at 1056) (internal quotation marks omitted).

Mr. Ball's function report essentially mirrored Plaintiff's testimony and Dr. Flood's assessment. Like Dr. Flood, Mr. Ball reported that Plaintiff had difficulty getting along with others, following instructions, completing tasks, remembering, concentrating, and understanding. (A.R. 186.) Mr. Ball indicated that the side effects of Plaintiff's medications included drowsiness and fatigue. (A.R. 185.) Like Plaintiff, Mr. Ball reported that Plaintiff's impairment caused him to become depressed, paranoid, and suspicious. (A.R. 186–87.) Mr. Ball further reported that Plaintiff could only walk for a short distance before needing a rest. (A.R. 186.) Nevertheless, Mr. Ball stated that Plaintiff attended Narcotics Anonymous meetings and went outside on a daily basis; was able to sweep the floor and do laundry; had no problem with personal care; and managed his own finances. (A.R. 182–84.) With few exceptions, Plaintiff's testimony and Dr. Flood's assessment incorporated the same limitations noted by Mr. Ball, and the ALJ considered these limitations in his decision. (A.R.

17–20.) Mr. Ball's function report failed to add any additional information for the ALJ to consider.

The Court finds that the ALJ's failure to give express reasons for rejecting Mr. Ball's function report was harmless error. The ALJ discredited Plaintiff's testimony and rejected Dr. Flood's assessment, and by doing so, implicitly rejected Mr. Ball's statements. No reasonable ALJ would have reached a different decision based on this evidence, even if Mr. Ball's statements were fully credited. *Stout*, 454 F.3d at 1056; *see, e.g.*, *Whitley v. Astrue*, 2010 WL 3632755, at *9 (C.D. Cal. Sept. 13, 2010) (holding that ALJ did not err in failing to expressly consider lay witness testimony because statements "mirrored that of Plaintiff's own testimony" and "failed to add any additional information for the ALJ to consider").

**4.     Substantial Evidence**

Fourth, Plaintiff contends that the ALJ's conclusion is not supported by substantial evidence. (Mem. ISO Pl.'s MSJ 23–24.) For the reasons stated above, the Court disagrees. The medical record—including Dr. Paxton's, Dr. Soliman's, and Dr. Hurwitz's opinions—and the evidence of Plaintiff's daily activities supported the ALJ's determination that Plaintiff was not disabled. Considering the record as a whole, a reasonable mind would accept as adequate the evidence cited by the ALJ in support of his determination. *See Webb*, 433 F.3d at 686 (citing *Richardson*, 402 U.S. at 401).

## CONCLUSION

For the reasons stated, Plaintiff's motion for summary judgment is **DENIED**, and Defendant's cross motion for summary judgment is **GRANTED**. This Order concludes the litigation in this matter. The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

DATED: March 30, 2011

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge